Good morning, Illinois Appellate Court, First District. Court is now in session, the Third Division. The Honorable Justice Nathaniel House presiding, case number 17-1801, People v. Devante Jamison. Good morning. Good morning, Justice. Good morning, Your Honor. This case is being heard via Zoom due to the COVID crisis. My name is Nathaniel House, I'm a justice on the Appellate Court and presiding over this case with me. Our and Eileen Burke. We're going to follow this procedure this morning. We're going to allow each side in turn to have 10 minutes of uninterrupted presentation. And after the presentation, the justices will have questions, will ask questions if they have any. After the both sides have presented, the appellant may reserve some time for rebuttal, after which time I'll turn it over to you, Your Honor. All right, very well. We have Ryan Carroll representing the appellant Devante Jamison. All right. And for the state's appellee, is the name your name? Christine Cook on behalf of the people. Good morning, Your Honors. Good morning. All right, Mr. Carroll, you can proceed when you're ready. Thank you, Your Honor. Well, given that we are now in agreement with the state as to sentencing, I will only be addressing the reasonable doubt and jury instruction issue unless Your Honors have questions about the sentencing. So as to the first issue, the evidence presented at trial was not sufficient to prove that Brandon's gunshot wound was beyond a reasonable doubt, a contributing factor to his death from pneumonia. While the medical experts, Dr. Arun Kumar, opined that it was probable that the pneumonia was caused by a bacterial infection, as the state acknowledges, because the proper testing wasn't done, the doctor could not rule out a viral cause for the pneumonia. And while the doctor made a connection between the gunshot wound and possible bacterial pneumonia by explaining how the paralysis made Brandon more susceptible to catching a bacterial infection, there was no viral infection. The doctor never testified that the paralysis also made Brandon more susceptible to catching a viral infection, nor did the doctor testify that Brandon was more susceptible to succumbing to pneumonia in general. So the most the doctor said was that it was likely that the pneumonia was caused by a bacterial infection. However, likely was not good enough to satisfy the state's burden of proof. Due process required the state to show more than it was just more likely than not that Devante's conduct contributed to Brandon's death. It required proof beyond a reasonable doubt. And therefore, the doctor's testimony that it's merely likely was not sufficient to sustain Devante's conviction. And for this reason, we asked this court to reverse Devante's murder conviction. Now, if this court were to find that the evidence was sufficient, then this court should still remand for a new trial, because the trial court's denial of the involuntary manslaughter instruction was reversible error, was there at least some evidence to support the instruction. The instruction was given at the first trial based on the same evidence, and the instruction should have been given again at the second trial. Now, while Devante ultimately acknowledged pointing the gun at Brandon and that his finger pulled the trigger, he maintained that he did not intentionally fire the gun and that he was not aware that the gun was in firing condition. Now, if believed, that would support a finding of recklessness. And this case is very similar to the case of People v. Beasley, which was cited in Devante's brief. Like Devante, the defendant in Beasley pointed a gun at an individual during a confrontation and ended up pulling the trigger, killing the person. Also like Devante, the defendant acknowledged that he pulled the trigger, but he maintained that he did not intentionally discharge the gun and that he just reacted out of fear. And the appellate court in that case held that it was reversible error to deny an involuntary manslaughter instruction where there was some evidence to support the defendant's claim. In that case, the supporting evidence was that a witness testified that the defendant was in the moments leading up to the shooting and did not raise the gun until the decedent started to run. And here, there's even more evidence supporting Devante's claim. Similar to the witness's testimony in Beasley, James Jones testified that Devante was pointing the gun at the ground up until the time when Brandon started challenging him more aggressively. Jones also testified that prior to the shooting, people other than Devante were handling the gun and repeatedly chambering and unchambering rounds. And this would explain why Devante did not know there was a round in the chamber at the time. And finally, the firearm expert testified that there was at least one explanation for the gun being jammed when it was found was that it was not being held firmly enough when it discharged. And that would be consistent with Devante's assertion that he did not expect the gun to fire. Therefore, since there was at least some evidence supporting the involuntary manslaughter instruction, it was error for the court to deny the instruction. And because from that evidence, the jury could rationally have found Devante guilty of involuntary manslaughter rather than murder, the error was not harmless. So just to sum up, we ask that this court either reverse Devante's conviction but under the first argument or remand for a new trial under the second, or at the very least, remand for resentencing under Section 5-131C2 of the Juvenile Court Act. All right. Thank you, Mr. Carroll. Justice Burt, do you have any questions? I do. Good morning, Mr. Carroll. How are you today? Fine. I'm fine. Good. Okay. So if we're all in agreement, it has to go back for resentencing, right? Yes. Okay. So if it goes back and the state's attorney or whoever makes the determination that they're not going to proceed to adult sentencing, that they would just leave it as it is, that he was a juvenile at 15, do we have to reach any of the other issues? Yes. Because the court could still reverse outright due to reasonable doubt. And under the second issue, the jury instruction, you'd have the opportunity to argue recklessness and be convicted of only involuntary manslaughter, which would have sentencing issues. Okay. Let's go to the involuntary issue then. So there was, you seem to be, and correct me if I'm wrong, you seem to be arguing that because his friends were playing with the gun previous, he wouldn't have specific knowledge that he knew there were guns, that the weapon was loaded. Is that correct? No, that's incorrect. It's not- He knew the gun was loaded. You're not contesting that. We're not contesting that he knew the gun was loaded, that he didn't know there was a round in the chamber. Okay. But he knew the gun was loaded. Okay. And there was a testimony from the firearms expert that what was needed in order to pull the trigger, it wasn't just brushing against the trigger. Is that right? That's correct. Okay. So is it your position that Devante's statement that he didn't mean to shoot him is sufficient to meet the sum evidence threshold? Not his statement alone, but his statement combined with the other evidence I mentioned, such as James' testimony that he was holding the gun down to his side in the moment up to the shooting, which was similar, found to be sufficient to justify the instruction in Beasley. What was the distance between the defendant and the victim in Beasley? Was that a factor that was looked at? I'm sorry, Your Honor. I don't know. No problem. Okay. So in this case, though, Devante and the victim were several feet apart, right? Not across the street, not half a block, just several feet. Yes. Okay. And so just run with me here for a second. So if the trial court analyzed his statement saying he didn't intend to shoot him and found that that wasn't credible, what does that do to your argument? If the trial court found that there was... The trial court is listening to his testimony and determining whether there is some evidence which would indicate she should give an involuntary murder instruction, correct? Correct. So if the trial court found that the defendant's statement was not credible, do you think that the other evidence that you pointed to is sufficient to require us to find the court abused her discretion in not giving that instruction? Yes, I do, Your Honor. Even if the court didn't find Devante's statement credible, since there was some evidence beyond his statement, then that should have been gone to the jury to make the determination. Okay. So you agree that the correct standard of review on this is abuse of discretion? Correct. So that means no reasonable person could have found the way this court found? I believe so. So based on the testimony that you detailed for us today, you believe that that meets the no reasonable person could have found this way? Yes. I don't think no reasonable person could have found there is no evidence supporting the... It's not no evidence, it's some evidence. Yes, some evidence. Okay. And the court has to do an evaluation on whether there is some evidence, correct? Correct. And that evaluation includes a determination of whether it's credible or not? I think if... So let me just pose this, Mr. Carroll, wouldn't every defendant say, I didn't mean to shoot him? And isn't it required for the trial court to make a determination of whether that meets a threshold to give that instruction? I mean, a defendant could say that, but I mean, the case law says just their claim is not sufficient. There has to be some evidence beyond that. And in this case, there is, as I pointed out. So nearly... And the court cannot evaluate that evidence. Is that your position? That is my position, that at that point, the court would be stepping into the shoes of the jury. So as long as there is some evidence outside the defendant's statement that supports the instruction, then it should go to the jury. Okay. Thank you, Mr. Carroll. I have no other questions. Thank you, Justice Burke. Justice McBride, do you have questions? I do. Good morning, Mr. Carroll. Good morning. You indicated in your remarks a little earlier that the same evidence was heard at this trial. Do you think that's accurate? Same basic evidence. I didn't... You froze. I didn't hear your question. I'll repeat it. I'm sorry to interrupt. Mr. Carroll, you indicated that the same evidence was presented at this trial and that the... And an involuntary was given at the first trial. No. Is that correct? Are you sure that the same evidence was presented? I think it's basically the same evidence-wise, yes. But the testimony of the defendant was quite different because he was asked numerous times about things he said at the previous trial and things that he said at this trial. So how could that evidence be the same? Well, in terms of his claim of pulling the trigger, while he was reluctant to admit to that at the second trial, he did ultimately do that. Okay. You also said that Jones, the young fellow that testified, he corroborated that the defendant had the gun down at his side, right? Yes, I believe so. That was some evidence to support this involuntary. Correct. Okay. But keeping the gun at his side at some point in time, there's no case that would even suggest that. But the fact of the matter is Jones actually testified at both trials that as soon as he saw the gun come up, or was it just before, he ducked out of the way and got out of there. And then he heard the paw, like the gunshot. Is that true? Yes. Okay. So he never saw the shooting. He didn't see him take the gun, raise his arm, shoulder length, pointed at the victim and hit him in the chest. Well, there's some inconsistent testimony. Again, there's inconsistent testimony in Beasley as well. And again, I believe at that point, it's up to the jury to make the determination. Well, I think you're right. I think you're right, certainly, that it's up to the jury. But Jones never, ever testified that he observed the actual shooting. Isn't that true? I still believe he testified at some point that the gun was pointed towards... Ron, let me pull up. I think the record will show that. So we can move away from Jones. My recollection is that both times, either at the first trial or second trial, he specifically did not... He said he didn't see the actual shooting. But I could be wrong. Okay. So put Jones aside. Oh, go ahead. Go ahead. So I was going to say that even beyond that, Jones' testimony about seeing other people handling the gun and chambering and unchambering rounds, that also would support Devante's claim that he did not know the gun was in firing condition. So we're not hanging our hats solely on the gun being pointed to the ground. Okay. Well, but you conceded earlier that Devante knew the gun was loaded, but he was not sure there was a round ready to be fired. Correct. Is that true? Okay. So he knew the gun was loaded? Yes. All right. And you're not conceding... You're not in any way disputing that this defendant knew the gun was loaded? That's correct. But the gun is loaded. Okay. All right. And so there are all these cases. I mean, going back some time, and I think you've conceded it, that the statement of a defendant that he didn't intend to kill the person or that it was an accident or that the gun just went off will never support an involuntary, that alone. Is that true? Yes, I agree. Okay. All right. Now, other case law says that speculative testimony cannot support any instruction, would you agree with that general principle of law? Purely speculative. Yeah, I think so. All right. I'm not trying to trick you. I'm just trying to move into a different area, because one of your arguments is that the forensic testimony by one of the firearms officers was that when he recovered the gun, it was... What was the testimony? It was jammed? Just that one possibility was that if the gun wasn't being held properly or firmly enough when it discharged, it could cause the gun to jam. Okay. So, but there was no testimony. Was there from anyone that the gun wasn't held firmly enough? No one testified to that, did they? Uh, no. But again, I think it's a common sense that if you're not expecting a gun to go off, you're not going to be holding it as you would if you were intending to fire it. Okay. All right. Now, the other thing I wanted to talk about was, you know, one of the reasons all these cases say that you can't get up and say, I didn't intend to kill the person. It was an accident or, you know, the gun just went off or whatever. There's a lot of case law that says this because that's really not evidence of recklessness when you actually have a gun, like the one here, you said you agree was loaded. You pointed at an individual. You fire the gun. He eventually, I mean, in many ways, he said he fired the gun. He was first trial. It was his finger was on the trigger at the second trial. It was like it was touching it. I'm not sure. But, but all these cases say that those are not evidence of recklessness. They're actually deliberate acts. Would you agree with that? If it's just the defendant's statements alone, yes, I would agree with that. Okay. And in these cases, we're not looking at an intent to kill, are we? We're not the requirement of intent under the law, the requirement of knowledge under the law, and the requirement of the definition, rather, I should say, of recklessness. They're defined in our statutes. True? Yes. And so for a murder charge, we're not looking to determine whether he intended to kill, but that his acts were such that they were intentional, that he was doing something specifically. Correct. Okay. All right. And that's why these cases, I think, say that to say, you know, I didn't intend to kill him isn't really the issue. The issue is, were his acts deliberate? Would that be fair? Yes. Okay. All right. So, and aren't there, like, so many, so many cases that say that when a person takes a loaded gun and fires it, even at a crowd, but if a person takes a loaded gun, fires it at his intended victim or the victim, not intended victim, fires it at a human being and hits him, the bullet hits that person striking them, that that is not evidence of reckless behavior. If they, I would agree with that, if they intended to discharge the gun. Okay. But I don't think any of the cases that you've cited in any way, parse this distinction between firing a loaded gun and firing a gun where the person says to the jury, I'm not sure there was a round in the chamber. Is there any case like this that you're, you could point us to? Well, in Beazley, the defendant knew the gun was loaded and he acknowledged pulling the trigger. And he said, well, I didn't intend to do so. And, you know, that's what he said, just like DeVonte said. And the court looked at this, you know, other evidence and found that there was some other evidence beyond the defendant's statement to support an involuntary manslaughter. And Beazley had a number of witnesses testify. Weren't there like six or seven? Yeah, I think it was a large crowd there. Okay. So there was a crowd. This was a big crowd. There were different people watching it. And there were different people giving testimony. Unlike the case here, wouldn't you say? I mean, if there's that, if nothing else, there's that distinction. Yes, there's less witnesses in this case. All right. Is DeVincenzo still good law in terms of the factors that a judge, a court may apply to determine whether or not an involuntary manslaughter instruction is appropriate? I think so. Okay. Well, is there any factor in DeVincenzo that would support the court giving it? I can go through them. One is the, you know, the difference. Here it is. Let's see. Where is it? The size of the two individuals. Does that support the involuntary? Well, I believe DeVinci was quite smaller than Brandon in this case. Okay. Gee, I'm trying to get the other ones. Whether a weapon is used. Only one weapon was used here, right? We only have one gun. We only have one gun. Whether the victim was defenseless. Any evidence that the victim was doing anything other than standing there several feet away? He was challenging Devante. By words? Yes, by words. Okay. So that means that he was... Well, the judge gave the second. Yes. Other than words, is there? Sorry, I didn't make that up. I apologize. There was no evidence in this case other than words before the shooting? Yes, besides gesturing and words. Correct. All right. Now, last thing I want to ask is, is there a harmless error? Does it apply for instructional errors? I thought you kind of took the position in the opening brief that it can never be harmless if the instruction is on a lesser included offense, but I may be mischaracterizing. But in your reply brief, I don't think you take the same stance. The state says there can be harmless error. And I think... Would you tell us your position? Well, I think in a case like this and the case I cite, that the harmless error analysis is essentially baked into the analysis of whether the instruction should be given. Because so long as there's evidence that the jury could rationally find for the defendant, then the instruction should have been given. And since the jury could rationally have found the involuntary, that it's also harmless. And it's basically, you're doing the same analysis twice. Though I don't believe that's always the case. I know the case is statesided. But in there, they're charged with felony murder. So whether or not the mental state for killing a person didn't matter, so long as the underlying forcible felony was proven. So in that case, under that circumstance, not giving an involuntary manslaughter instruction would be harmless. But we don't have that situation here. The mental state of murder does matter. Okay. I think that's really all I have at this time. Thank you. Thank you, Justice McBride. Mr. Carroll, when People versus McDonald, Supreme Court says that there has to be some evidence in the record, which, if the jury believed, would result in recklessness or a manslaughter conviction. What precisely, what testimony precisely are you pointing to that you're saying, if the jury believes this, then there'd be the lesser included offense? I think the strongest would be the James Jones's testimony about the people handling the gun. If the jury believed that, and they believed Devontae's statement that he didn't know there was a round in the chamber, then I think that would support the jury finding that his actions was reckless. What if the judge determined that he didn't believe the statements were credible? Can the judge withhold that instruction on that basis? I mean, again, I don't think so. If the jury could rationally believe the evidence and fine for the defendant, I think that standard means that it needs to go to the jury. I don't think the judge can make the credibility determination on their own. All right. Thank you. I have nothing else. If anyone has anything else. I have one question. If the judge can't make the credibility determination prior to giving the instruction, then what's the point of the judge doing any analysis? I'm missing you there. I don't understand your argument. The judge has to do a credibility determination. Well, the judge can look outside the defendant's statements. There's other evidence in the record that would support it. Otherwise, we're basically taking the trial away from the jury. But isn't instructing the jury solely the responsibility of the trial court? And in order to instruct the jury correctly, they have to do an analysis of the evidence that they have heard. Yes. But if the judge could just say, well, I don't believe any of the witnesses, so I'm not going to send the case to the jury. I mean, you're basically getting to that point. So long as there's some evidence beyond the defendant's statement, I think the judge has to not determine whether or not I believe it, but whether a jury could rationally believe it. And I think in this case, the jury could rationally believe James' testimony or James Jones' testimony that he saw people other than Devante handling the gun and chambering and unchambering rounds. I mean, there's nothing unrational about that. And I think if the judge just says, OK, well, that might be rational, but I just don't believe the defendant, I think that's just the judge improperly stepping into the shoes of the jury. All right. Thank you, Mr. Carroll. Could I ask a question, Justice House? Mr. Carroll, was the testimony from the day before, a couple of days before, was it that they were actually taking bullets in and out of the gun, or was it that they were simply releasing the magazine and then it would fall out and then it would be put back in? Wasn't that the testimony? No, I don't recall testimony about taking out bullets in the chamber and then putting them back in and then taking the clip. And then I don't remember any of them. Yes. You're misrecalling the evidence. The testimony was that the day before, I think it was the day before, maybe two days before, I believe it was Jones saying he saw Devante sliding the clip in and out of the gun. OK. Jones later also testified that people other than Devante were cocking the gun back and forth and chambering and unchambering rounds, making the bullets pop out of the gun. OK. All right. Well, we'll take a look at that. The other thing I wanted to ask you about is in DiVincenzo, the court said that in general, a defendant acts recklessly when he is aware that his conduct might result in death, a great bodily harm, although that result is not substantially certain to occur. Do you think that's a correct statement of the law? Yes. So reckless conduct generally involves a lesser degree of risk in conduct that creates a strong probability of death. OK. So is it your position that when you point a gun, you know it's loaded, you aim at a victim or a target, you shoot them actually in their body, in the center of their body, that that is generally reckless? If you pull the trigger not expecting the gun to go off, then yes, I think that would be reckless, you know, so long as there are other evidence backing you up. Yes. And like in the cases I cited, Leigh Woods Cole in the brief in that case, the defendant was someone the defendant was accountable for, pointed a gun he knew had bullets in it at an individual, intentionally pulled the trigger. But because, but he thought that the, it was a revolver and he believed that the chamber that was lined up was empty. Unfortunately, it was not and ended up shooting and killing the individual. And that was a, that was a reckless case, a recklessness case. Sure. In fact, that case, the defendant was found guilty of involuntary manslaughter. One of the issues on appeal was not about jury instructions. There was never a concern of that. It was whether or not he could be accountable. And that's the case where a bunch of guys were going on a hunting trip and they decided they were going to wake up their friend by shooting him in the feet. Is that right? Yeah. Is that cool? Okay. And Murray, the other case decided was again, never, never involved instructional error. It was about whether or not there was reasonable doubt for involuntary manslaughter, which was what was found in that case. So neither of those, and I think there was kind of evidence of a, well, I'm not going to get into Murray, but neither one involved in instructional error, as I recall. That's correct. However, there are examples of reckless conduct. Sure. Yes. Yes. And I don't, I don't know of any case that would indicate that pointing a loaded gun from several feet away, pointed at a victim who has nothing in his hands and knowing the gun is loaded, that that amounts to recklessness. I think that is, there's no, there is a substantial risk as opposed to an unsubstantial risk that the harm would be death. I just, I'm not sure of any case that you've cited to us that resembles these facts at all. At least from the standpoint of Mr. Jemison's testimony. So, but you know, altercations in the other cases, being close to someone, whatever. Anyway, I think I understand your arguments and I think it was well presented. So that's all I have. Thank you. Ms. Cook, you may proceed when you're ready. Thank you. May it please the court, counsel again, Christine Cook on behalf of the people. Just to be clear about the facts in this case, the defendant and the victim were not just a couple of feet away from each other. They were on opposite sides of the street from each other. When the confrontation happened, originally the victim was talking to some friends on one side of the street, had called over to the defendant on the other side of the street. And according to James Jones, when the defendant who was kind of irritated at having to answer to the victim's call, when he came off the porch originally, he had his gun already out, which was pointed down to the ground. And then the victim and the defendant crossed the streets and now they're on opposite sides of the street. They're not just a few feet away. They're on opposite sides of the street. And there's no dispute that our victim in this case is unarmed. As to the involuntary murder instruction, it's not really, and I agree with counsel on this. It's not really a matter of credibility when it comes to issuing the instruction. But that being said, when all you have is a defendant's testimony that he didn't intend to shoot and he didn't intend to kill anybody, that as a matter of well-established law precludes the giving of an involuntary murder instruction, as the court clearly noted. And our cases replete with that about, you know, citations all over the record on page 29. And so the trial court in this case properly held that as a matter of law, he could not provide or she could not provide the involuntary manslaughter instruction because the only evidence about the defendant not intending and being reckless was his own testimony. James Jones never testified, and Justice McBride clearly noted and properly so, that James Jones never witnessed the shooting. And in fact, when he saw the defendant coming off the porch and they're switching sides, he went into the gangway next to Selena's house and he testified he heard the victim say, what, you're going to shoot me? I ain't afraid to die. And then a few seconds later, he hears the paw of the gun. Now, clearly at this point, the victim would not have been saying, I'm not afraid to die. What are you going to kill me? If defendant didn't already have his gun out and pointing at him. So I just want to make sure as a matter of law that a defendant's testimony only cannot provide a basis for an involuntary murder instruction. Further, there is testimony that the defendant deliberately fired a knowingly loaded gun. His own testimony, James Jones's testimony about the day before or two days before and who was playing with the gun. This record is abundantly clear that the defendant always knew that the gun was loaded. And so again, there's no inconsistency there. There's no basis as a matter of law for an involuntary man's instruction. There is also no testimony that the defendant was weakly holding his gun. Justice McBride, again, you noted that's complete speculation. The defendant never testified to that at all. The trial court in this case clearly found that it could not as a matter of law provide an involuntary manslaughter instruction. And there is no basis for doing so at all. The defendant knew when he bought the gun that it had six bullets. He knew after his friends would play with the gun that the gun was still loaded. And so any of that is clearly no basis for any type of involuntary manslaughter instruction. DiVincenzo is good law. The trial court again noted in the motion for new trial, talking about the elements of that, about the disparity of size, the duration, whether the defendant inflicted multiple wounds, whether the victim was defenseless and all the other elements, that none of those elements were met either. On page 29 of our brief, we have a long string site of case law, which simply holds that the knowing firing of a loaded gun into a person cannot as a matter of law provide a basis for an involuntary manslaughter instruction. This court has done plenty with distinguishing Cole. I would like to talk about Beasley for a moment. Um, the defense likes to parse and snip a lot of claims, take things out of context and not analyze the facts and the context of crimes in his effort to claim that all of these cases support an involuntary manslaughter instruction in this case. Beasley is a really unusual case. Not only did the defendant use his cousin's gun, as opposed to the defendant here who was using his own gun, the Beasley defendant testified that the gun went off accidentally. And his testimony, unlike the testimony in this case, was corroborated by several witnesses, including the victim's own cousin, that he was, the defendant had warned the crowd several times not to get any closer. He wasn't pointing at anyone in particular. So in that case, as a matter of law, there was some evidence to provide an involuntary manslaughter instruction as a matter of law. Again, not necessarily a credibility finding, but the fact that other people had testified to this provided that basis for that instruction to be given. We don't have that here. Also in Beasley, the defendant was convicted of second degree murder too. There was a lot of self-defense claims and we don't have that here. The defendant was properly convicted of first degree murder. Nor does it matter what instructions were given in the defendant's first trial at all. As to the reasonable doubt claim, the defendant has cleverly couched this claim as us not proving that the victim died of bacterial pneumonia. We did not need to prove that the victim died of bacterial pneumonia. We needed to prove beyond a reasonable doubt that the pneumonia was caused by his paralysis, which was caused by the gunshot wound. And that was abundantly clear. Dr. Arun Kumar clearly testified to a reasonable degree of medical certainty. The quote, cause of death was due to pneumonia due to the gunshot wound to the abdomen. She could not determine whether it was bacterial or viral. It did not matter. This victim died because he was paralyzed as a result of being shot. And that paralysis caused the pneumonia. The people clearly met their burden in this regard. The defendant cannot establish that the trial court abused its discretion improperly refusing the involuntary manslaughter instruction where there was no evidence to support it. Accordingly, the people respectfully request that this court affirm the defendant's first degree murder conviction. Thank you. Justice Burke, do you have any questions? I do. Ms. Cooke, you just said it doesn't matter what instructions were given at the first trial, where they gave the involuntary instruction. Wouldn't that cut against the argument that this was an abusive discretion to not give? I'm sorry, it would cut for the argument that it was an abusive discretion not to give the involuntary instruction because another judge did the same analysis, heard the same testimony and determined that involuntary should have been given. Because I don't know what the testimony was in the first case either. I know that the defendant was impeached in several regards about whether or not he pulled the trigger. And in the first trial, he did testify he actually pulled the trigger. And again, abusive discretion allows for a lot of discretion. I don't know what the testimony was in the first trial. And in the first trial, defendant was convicted of first degree murder. So in this case, the standard is fairly low for the defendant to get the instruction. It is some evidence. It doesn't say some credible evidence. It doesn't say some determinative evidence. It just says some evidence. Right. So in order to have some evidence, the defense has established several things that were presented. Why are those insufficient to establish the some evidence threshold? Because the law is clear that when the only evidence about recklessness comes from only the defendant, that that is insufficient as a matter of law. Again, I cite to all the string sites on our case in our brief on page 29. If there had been some other evidence, if any witness had come forward with anything, he probably would have been entitled to that instruction. But as a matter of law, when the defendant is the only one providing that quote unquote evidence is a matter of law, it's insufficient. Thank you. I have no other questions. Thank you, Judge Justice. Justice McBride, do you have any questions? Yes. Miss Cook, was the evidence was there evidence in this case that the defendant threw the gun into some bushes after the shooting? Yes. He went behind Selena's house and threw the gun in some bushes and then went up the stairs and hid in a closet. The gun was recovered shortly thereafter. Okay. You would agree that if there is evidence by the defendant, and there was testimony, that if there's additional evidence, I think Justice Burke already asked you this, but if there's other evidence that supports that evidence, then the court should give an instruction on anything, you know, like a lesser included, like the involved here. Is that right? Okay. And that's really Mr. Carroll's argument is that it's not just the testimony of the defendant here. It's the testimony that was added by others. Would you agree? I know you wouldn't agree. Others. I know you don't agree. Well, that that's what's here. Okay. But this testimony by the firearms person was simply that the chamber when the gun was found was the gun was jammed. Is that right? No, the person who recovered the gun said initially when I think he went to I'm assuming when he went to unload it, he said the gun was jammed, but the firearms expert said she had no trouble firing the gun. But that would you is your position that that doesn't have there's no inference from that about anything regarding a bullet in the chamber. Is there? No, there's really there. There is no testimony. In fact, the only testimony is, is that there was indeed a bullet in that chamber. Is that right? Right. So is there any evidence in this record to suggest other than speculation that there wasn't that he thought there wasn't a bullet chambered and ready to go? No evidence. None whatsoever. Is that your position? Yes. Okay. So, and then what is your position about this? The discussion with these other? Well, actually, I think came from Jones and then the defendant that either the day before the third or maybe, maybe the July 2nd, there was testimony about people being in the house and they were all playing with the gun. Was there any testimony there? I think Mr. Carroll has pointed out that there was testimony that people were taking rounds in and out of the gun. Is that true? I don't know if they were taking rounds in and out of there. They were talking about, you know, playing with the gun. But then again, the defendant testifies that he retrieved the gun. Well, I'm not exactly sure what they were doing. The defendant testified that on that day, after the gun was being passed around at whoever's house it was, that twice he put the clip, he pressed the button and twice the clip came out. Okay. Well, we'll have to really examine that testimony, but I'm not sure that that suggests anything about a bullet not being in the chamber a day, two days later. What does DiVincenzo mean when it says that recklessness is where there's a risk of bodily harm, but it's the result is not substantially certain to occur. Well, it is different than intentional murder, isn't it? Sure, sure. Well, what does it mean then? What does this, it's not substantially certain, like, what does it mean? Does this have anything to do with pointing a gun at a person? Knowing it's loaded, forget about bullet in the chamber, knowing it's loaded, being several feet away from a person, firing at that person, does that mean that that result is not substantially certain, that killing the person is not substantially likely to occur? No. Is there any case that says that? No. And is that your, that's pretty much your position, right? There's no evidence here, but if Mr. Carroll's right, you do agree, if he's correct, that there is some evidence that we can couple with the defendant's testimony, then an instruction should be given. Probably, depending, again, what that evidence is. It just cannot be based on the defendant's testimony. And the operative word here is some, is that right? Yes. Okay. It's not however slight, that used to be found in the cases, that's gone, true? Right, right. And, but some is the word. Okay. And that has to be something that the trial court determines, but you also agree that there is no credibility determination. The judge is not free to decide whether to believe it or not, but certainly a judge could say, well, there's no evidence, there was no evidence that there was no bullet in the chamber, no evidence to support that. Right. If a judge says that, that's not necessarily making a credibility finding, but the court is saying there wasn't this evidence or this evidence was speculative. The judge can still make that. Exactly right. Okay. And the judge could say that maybe the testimony from a couple of days before is not, is remote. And it's not, you know, whether someone said they were playing with the gun a few days before, doesn't really amount to some evidence. Correct. All right. That's all I have. Thank you. And I just want to note again, when this playing of the gun happened the day before, it can't be some evidence because the defendant even testifies. I still played with it afterwards and took the clip out twice. I pressed that button twice myself. So it doesn't even matter. All right. I don't have anything further. Okay. Thank you, Justice McBride. No, Ms. Cook. Now, we're talking about the Vincenzo. When they talk about an act where the death is substantially likely to occur, could that case be talking about a situation where an individual pulls a gun out? The firing of the weapon is something that happened, but isn't it what's important is what was the state of mind of the defendant at the time? And pulling a weapon out to intimidate or defend yourself against an intimidating individual is not necessarily the natural result of simply pulling the gun. It's what happened afterwards. When I pulled the gun to intimidate this guy, my finger hit the trigger. Now, would that be a reasonable interpretation of what was meant in that case? I'm not sure what your question is. Well, my question is, is that you're talking about the Vincenzo, and it talked about involuntary manslaughter is about an act which is not the death is not the natural consequence of an act. And what I'm pointing to is that in this case, the defendant, it says my act actually was not shooting this guy, but my act was to pull this pistol out. When he started talking to me and my finger hit the trigger, and that's in pulling a gun, pulling a load, even a loaded gun out. It's not does not naturally result in the death of an individual. No, but pulling the trigger of a knowingly loaded gun at a person as a matter of law precludes an involuntary manslaughter instruction. Even if even if there's testimony, there was an accidental hit on the trigger. He never testified it was an accidental hit on the trigger. Okay, we'll take take a look at the record. Let's see. Exactly. Never testified that and was in fact impeached on cross examination with his prior testimony. Yes, my finger hit the trigger. Previously testified to he repeatedly said his finger hit the trigger and the judge even noted I don't know if it was in the finding of guilt or at the motion for a new trial and clarified for this court. Man pulling the trigger or had I don't know if she said he gestured, but she made a very clear finding as to what that was. Now, also, I want to get to something you're brief about the size and weight of the disparity between the parties. The defendant was 15 at the time and the victim was 19 years of age. Is that right? Yes. And the victim, the testimony was that the defendant. The time was what five foot three. Five. Not sure about that in the motion for the new trial, the judge went over the defense and so elements and the judge said the defendant knew the victim was unarmed. The victim was defenseless. Just standing back to the size. I'm talking about the size. This is that he was five foot three. And the defendant, the victim was actually over six feet tall. Is that right? You know what? I'm not sure. But again, in the motion for a new trial, the judge addressed that claim. The defendant was only a few years. They were only a few years apart, 15 and 19. And although victim was taller, he was very skinny. And then the defendant simply shot the defendant in the abdomen from a distance. Well, that's that testimony about the skinny that came from the testimony, the medical examiner. And that weight came was made. That weight was given after he's had two months of medical treatment, undergoing a gunshot wound and had suffered wasting of his leg muscles. And also it suffered a fatal case of pneumonia in the repo to assume that at the day of the shooting before he was shot, he weighed more. That's total speculation. I have no idea about that. Okay. I have no idea. I couldn't speculate on that. Well, the doctor said the leg muscles wasted. Wouldn't that be something that's very clear that he lost weight when the leg muscles are wasted. That's the testimony you used to prove that he caused the death. You introduced testimony that he's wasting away. He may be wasting away. But again, I have no idea what that condition, what he physically weighed or what his build was. I don't. But wasting away means you think you'd get lighter, right? In weight. Oh, you know what? You're asking me about muscle mass. Again, I couldn't speculate us to that part of the record. All right. All right. Now, a loaded gun, because a gun is loaded, an automatic weapon, as was the weapon used in this case, even though there may be bullets in the gun, it really can't fire unless there's a round in the chamber. Is that right? Yes. And the defendant says he didn't know anything about the chamber, anything about the gun or how it worked. Oh, he didn't know anything about guns. He didn't know the purpose of a gun was to fire bullets. Yeah. He didn't know anything about guns. Now, the Supreme Court in McDonald's says as long as there's some evidence, you talk about Beazley and there's a bunch of other witnesses. That goes to the quantum of the evidence, right? We're talking about what is the evidence in the record. And here we have more than just the defendant saying I didn't mean to shoot him. We have some other factors. And those other factors mean there is some evidence. What do you mean by the other factors other than the defendant's own testimony? The factor that the gun misfired, it was jammed. No, no, no, we don't know. That could have jammed when he threw it in the bushes. We have no idea. And it doesn't matter because it certainly didn't prevent the defendant from knowingly pulling a trigger on a loaded gun and shooting this victim. What happened is irrelevant. When you say knowingly, where do you get that in the record? When the defendant said he pulled the trigger and shot the victim. Okay. Testify to that. Okay. All right. All right. I have no further questions. Thank you. Anybody else have anything else? No, thank you. All right. Mr. Carroll, you can have a short rebuttal. Yes. Well, I just don't want to repeat myself. But in terms of the James Jones's testimony regarding other people playing with a gun and making bullets come out of a cocking and making the bullets come out, that's on page 363 of the second supplemental report of proceedings. Again, I would just point this court to Beasley. The defendant also acknowledged that he pulled the trigger. And the question was, was it done recklessly or intentionally? So the fact that Devante acknowledged pulling the trigger is not dispositive. And finally, just back to the reasonable doubt. The doctor's testimony or opinion that the cause of death was pneumonia, or that the pneumonia was caused by the gunshot wound was entirely based on the pneumonia being caused by a bacterial infection that could have come in through the bed sores and the catheter that went along with the paralysis. And again, the doctor made no connection between a viral infection and a gunshot wound. So unless you have any other questions, I'll just rest on my previous answers. Does anyone have any questions based on what we just heard? No. Okay. All right. Very well, then we'll take this case under advisement. The case is very well argued. You were both very well prepared, and we enjoyed the back and forth a little bit. So thank you both. This case will be taken under advisement, and we'll be issuing a decision in due course. Thank you. Thank you.